**ARKANSAS–MISSOURI POWER CORPORATION v. CITY OF KENNETT, MO. et al.**

No. 11688.

Circuit Court of Appeals, Eighth Circuit.

July 9, 1940.

Rehearing Denied July 31, 1940.

Langdon R. Jones, of Kennett, Mo., and D. C. Chastain, of Butler, Mo. (A. Z. Patterson, of Kansas City, Mo., on the brief), for appellant.

Arthur U. Goodman, Jr., of Kennett, Mo., and Robert B. Fizzell, of Kansas City, Mo. (Poppenhusen, Johnston, Thompson & Raymond, of Chicago, Ill., and Bowersock, Fizzell & Rhodes, of Kansas City, Mo., on on the brief), for appellees.

Before GARDNER and SANBORN, Circuit Judges, and COLLET, District Judge.

COLLET, District Judge.

The Arkansas-Missouri Power Company, referred to hereafter as the plaintiff, an

Arkansas corporation, seeks to enjoin the City of Kennett, Missouri, and others from carrying out contracts for the construction of a competing municipal electric power and light plant in and for that City upon the ground that those contracts contain provisions violating certain prohibitions of the Constitution and laws of Missouri. From a judgment dismissing its bill plaintiff appeals.

Plaintiff has for a number of years been engaged in the sale and distribution of electricity within the City of Kennett, Missouri. Until 1935 plaintiff's business was carried on under authority of a franchise from the City. That franchise expired in 1935. In August, 1933, the voters of the City of Kennett authorized the issuance of $140,000 of bonds for the purpose of constructing a municipal electric plant. The City has entered into a contract with the Federal Emergency Board of Public Works by the terms of which that Board, hereafter referred to as P. W. A., is to purchase approximately $114,000 of the City's bonds and make a grant to the City of an additional amount not exceeding $40,000, both to be used for the construction of the proposed municipal electric plant. The contract also contained provisions by which the City agreed to require any contractor erecting or constructing the proposed plant to observe certain fixed minimum wage scales for labor performed in its construction. The City has also entered into contracts with the defendant Fairbanks-Morse & Company and others for the construction of the municipal plant. Those contracts carry into effect the minimum wage scale provided for in the P. W. A. contract. It is charged that these wage scales are substantially higher than wages customarily paid in that community and hence the payment of the City's funds for labor at the rates there-

in fixed will amount in part to a gift of the City's funds to private individuals in violation of the Missouri Constitution, Article IV, Section 47, Mo.St.Ann., prohibiting the making of such grants or gifts of public funds.[1] Plaintiff's bill further charges that since the contract between the City and P. W. A. is unlawful for the reason stated the City is about to engage in competition with plaintiff by unlawful means, from which plaintiff contends it has the right to protection by injunction. This action seeks to enjoin the carrying out of the contract with P. W. A. and the related construction contracts. The trial court, after full hearing and the finding, among others, of the fact that plaintiff was operating without a franchise, dismissed the bill for want of a showing that the jurisdictional amount was in controversy. While that question may not be free from doubt, since upon the admitted facts the bill must be dismissed for want of equity, we will assume the existence of jurisdiction.

■ The rule has frequently been announced that a utility operating with authority within a municipality may obtain injunctive relief from unlawful competition and consequent injury to its business.[2] But here plaintiff is operating without a franchise. Its status has, under such circumstances, been characterized by the Missouri Supreme Court as illegal.[3] Plaintiff asserts no rights as a taxpayer. The question, therefore, is: What right has a utility operating illegally, or at most by sufferance,[4] to question the legality of another's competitive operation?

The City asserts that even if plaintiff had a valid franchise it could not question the legality of the contracts which create the threatened competition. The cases cited in support of that contention do not directly determine that contention. Those cases[5]

---

[1] "Sec. 47. *Municipalities not to lend credit or grant public money—firemen's fund permitted—pensioning blind.* The General Assembly shall have no power to authorize any county, city, town or township, or other political corporation or subdivision of the State now existing, or that may be hereafter established, to lend its credit, or to grant public money or thing of value in aid of or to any individual, association or corporation whatsoever * * *."

[2] Missouri Pub. Ser. Corp. v. Fairbanks, Morse & Co., 8 Cir., 95 F.2d 1; Frost v. Corp. Comm., 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483; Peoples Transit

Co. v. Henshaw, 8 Cir., 20 F.2d 87; Iowa Southern Utilities Co. v. Cassil, 8 Cir., 69 F.2d 703; City of Campbell v. Arkansas-Missouri Power Co., 8 Cir., 55 F.2d 560 and cases there cited.

[3] State v. Missouri Utilities Co., 339 Mo. 385, 96 S.W.2d 607, loc. cit. 613, 106 A.L.R. 1169.

[4] See State ex rel. City of Lebanon v. Missouri Standard Tel. Co., 337 Mo. 642, 85 S.W.2d 613, loc. cit. 620; State v. Arkansas-Missouri Power Co., 339 Mo. 15, 93 S.W.2d 887, loc. cit. 892.

[5] Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374; Duke Power Co. v. Greenwood County,

597

insofar as applicable here, hold in effect that although complainants possessed the legal authority to operate, yet the competition complained of was lawful competition, the existence of which furnished complainants no basis for complaint or relief, and therefore the alleged unlawfulness of the act of the Government which furnished the means by which the competition was brought about was of no justiciable importance to complainants. But in the case at bar plaintiff is charging that the City, not the Federal Government, is committing an unlawful act, and it is from the act of the City that plaintiff seeks protection, and not from the act of the Government or others as was the situation in Alabama Power Co. v. Ickes and Duke Power Co. v. Greenwood County, above referred to.

■ That in order to justify injunctive relief from unlawful competition the unlawful act charged must be so closely related to the competition as to poison the competition with illegality to such an extent that the competition otherwise lawful becomes unlawful, is clearly stated in Missouri Public Service Corp. v. Fairbanks, Morse & Co., 8 Cir., 95 F.2d 1, loc. cit. 3. Illustrations of the application of this rule may be found in City of Campbell v. Arkansas-Missouri Power Co., 8 Cir., 55 F.2d 560, where an unconstitutional increase of indebtedness for the purpose of competition otherwise lawful, was enjoined; in Arkansas-Missouri Power Co. v. City of Kennett, 8 Cir., 78 F.2d 911 (when this case was here on a previous appeal), where the Court enjoined an unlawful delegation of municipal authority; and in Missouri Pub. Ser. Corp. v. Fairbanks, Morse, supra, where the unlawfulness charged consisted in a failure to follow the statutory manner of advertising for bids in the letting of construction contracts, and relief was denied.

The conclusion reached by the Supreme Court in Alabama Power Co. v. Ickes and Duke Power Co. v. Greenwood County, supra, that the alleged unlawful acts of the Government which brought about the competition, furnished complainants no ground for relief, may justify the conclusion asserted by the City that the alleged unlawful provisions of the contracts are not so related to the threatened competition, otherwise lawful, as to justify equitable relief from competition,[6] but whether the alleged unlawful act of the City in adopting a minimum wage scale, the lawfulness or unlawfulness of which we do not determine, bears such a relationship to the threatened competition as to make the latter unlawful, need not be determined since it is clear that plaintiff must possess the lawful right to operate before it may complain of another's unlawful competition.

■ In the case of Northwestern Light & Power Co. v. Town of Milford, 8 Cir., 82 F.2d 45, loc. cit. 47, 48, in the consideration of a situation where the party seeking equitable relief was without a franchise and was asserting the right to enjoin the performance of a contract between the City and another, this Court said: "The answer to this argument is that, as owner of a distribution system, the plaintiff was without right to contest the validity of the construction contract because it had no franchise rights to protect and therefore did not bring itself within those cases holding that a utility having even a nonexclusive franchise may protect itself from unlawful competition."

The quoted statement finds ample support in Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, loc. cit. 137, 59 S.Ct. 366, 83 L.Ed. 543. In the latter case the legal right asserted was the right to be free from competition. Finding that complainants did not possess that right the Supreme Court held that they could not question the constitutionality of the statute—the lawfulness of the instrumentality, which brought about the competition or in which the competition had its origin. In the case at bar since plaintiff has no franchise, under the law of Missouri it has no legal right to operate—to compete—in the City of Kennett. It therefore may not assert that a legal right to lawful competition has been violated, for, absent the legal right to engage in any competition, a legal right to be faced with only lawful competition does not exist.

The cause is remanded in order that the judgment shall be modified, dismissing the bill for want of equity.

302 U.S. 485, 58 S.Ct. 306, 82 L.Ed. 381, and opinion of the Court of Appeals in the same case, 4 Cir., 81 F.2d 986.

[6] See Missouri Pub. Ser. Corp. v. Fairbanks, Morse & Co., 8 Cir., 95 F.2d 1, loc. cit. 3.